## Kelly *versus* Perseverance Building Association.

*Settlement of Claim, Conclusiveness of Agreement for.—Appropriation of Payments.*

1. Where one gave to a Building Association his bond and mortgage for $2000, to secure a loan of $1500, and after suit brought agreed in writing, upon a settlement between them, that judgment should be entered for the amount actually loaned with legal interest, it was held that the agreement for judgment was conclusive against the defendant, and that the issue raised upon the agreement and the jury trial thereon were unnecessary and improper. He should have applied to the court for relief from his mistakes, if any, under the agreement.

2. The payments made by the defendant upon his stock in the association, under the agreement, were not payments upon his bond: for the effect of such payment would have been to extinguish the stock, which by the agreement and settlement was not to be extinguished but to remain.

Error to the District Court of *Philadelphia.*

Michael Kelly, on the 30th of May 1855, gave his judgment-bond for $2000 to the Perseverance Building Association, on which judgment was entered September 11th 1857. On application of the defendant, the judgment was opened for defence, a *narr.* in debt on the bond was filed, to which defendant pleaded *nil debet, non est factum,* satisfaction, payment, set-off, with leave to add, alter, and amend, and to give the special matter in evidence: and on the issues thus made up the parties went to trial.

There were ten shares of the stock of this association originally owned by J. Murphy, who had paid on account of them $289.20, when he transferred them to Horace Kelly. Two payments of $12 were made by Horace Kelly, in the months of April and May 1855. On the 23d of March 1855, Michael Kelly obtained a loan from the association of $2000, and on the 30th of May 1855, he obtained another loan of $2000, giving his bond and mortgage for each loan, and transferring the stock held in the name of Horace Kelly as collateral security.

At the time the last loan was obtained, there was $400 due and unpaid on this stock, which was deducted from the net amount of $1500 advanced to him by the association. After this loan, there were monthly payments down to March 1857, amounting in all to $400.

In October 1857, he having failed to pay his dues, the association brought suit on the first loan, to September Term 1857, No. 1347. When this action came on to be tried, he confessed judgment in open court for $1760, to which there is no objection. At the same time, but not in open court, he signed on the back of the bond of May 30th 1855, the following agreement:—

"It is hereby agreed that the judgment in this case shall be reduced to the sum of seventeen hundred and twenty dollars

[Kelly *v.* Perseverance Building Association.]

($1720), made up of the following items, viz.: net amount of loan, $1500; eleven months' instalments on stock, $110; eleven months' dues on interest, $110: total, $1720.

(Signed)                    GEORGE L. DOUGHERTY,
                                 Attorney for plaintiff.
                            MICHAEL KELLY,
                            LEON B. HIRST,
                                 Attorney pro Kelly."

On the trial of this case, the plaintiff gave in evidence the bond dated May 30th 1855, from defendant to plaintiff, for the payment of the real debt of two thousand dollars; and then offered to prove the agreement made by said parties and endorsed on said bond, calling as a witness, George L. Dougherty, Esq., who being duly sworn, said:—

"I was present when an agreement was made and endorsed on this bond; signed my name to it as a witness. Defendant gave to plaintiff two mortgages, each for the payment of the principal sum of $2000, secured on the same property. Suit was commenced on the first mortgage prior to this suit; it was settled in open court. The amount in this suit was settled at the same time. The officers of the association, myself as their counsel, with the defendant and his counsel, Leon B. Hirst, Esq., met in the adjoining room on the 23d of February 1858, and after the examination of books, the sum of $1720 was fixed as the amount due on this bond. The agreement was then endorsed, was signed by myself as counsel for the association, and by Michael Kelly, the defendant, and Leon B. Hirst, Esq., as counsel for Kelly, in my presence."

The counsel for the plaintiff then offered the agreement of the 23d of February 1858, which was objected to by defendant's counsel, admitted by the court, and exception taken. The plaintiff here closed.

The counsel for the defendant then offered to show, on behalf of defendant, that he gave to the plaintiff this bond for $2000, and an accompanying mortgage, and had pledged with the plaintiff, as further collateral security, ten shares of its stock, held in the name of Horace Kelly, and received from the plaintiffs but the net sum of $1100; the plaintiff deducting as a discount twenty-five per cent., or $500, and retaining unpaid back dues on said stock $400, and that defendant has paid in dues and interest on this stock, in payment of this bond, an amount which reduced his indebtedness to plaintiff to the sum of $472.31, and called as a witness the said George L. Dougherty, Esq., who deposed "that $1500 was the net amount of money received by defendant; that was the amount of the order. I think the amount passed through my hands. The agreement was that defendant, upon payment of this amount, $1720, was to be enti-

[Kelly *v.* Perseverance Building Association.]

tled to his shares as if he had not borrowed, and had fully paid up his dues to that amount."

The defendant's counsel offered to show further that there was a mistake in the calculation of the amount due plaintiffs at the time of making and endorsing said agreement, and called as a witness William S. Jones, who being duly sworn said, "I am the secretary of plaintiff." Being shown a book, "This is defendant's receipt-book for stock of Horace Kelly; contains charter, constitution, and by-laws of the said association. Horace Kelly bought stock of Murphy, ten shares, subject to the payment of $400 back dues to the plaintiff. Plaintiff deducted twenty-five per cent., $500, and also $400 which was due on the stock. This is the receipt-book. These amounts in it were paid. All the receipts were before the agreement of 23d of February 1858."

This was an ordinary building association receipt-book, containing the constitution, by-laws, &c., of the association. It showed payments by Kelly and the person from whom he purchased the ten shares, J. Murphy, to the association, amounting to $744.70.

The defendant's counsel then offered the book to prove the payments on the stock before the agreement of 23d of February 1858, which was objected to by plaintiff's counsel, overruled by the court, and an exception taken by defendant's counsel. The counsel of the defendant then, by leave of the court first had, filed an additional plea, to which the counsel of the plaintiff demurred. The learned judge charged the jury to find a verdict for plaintiff for the amount of the agreement of February 23d 1858, with interest.

There was a verdict and judgment for plaintiff for $1818.10, whereupon the defendant sued out this writ, and assigned for error :—

1. That the court erred in excluding the evidence of receipt-book for stock of defendant.

2. That the court erred in charging the jury to find a verdict for the amount of the agreement of 23d of February 1858, with interest.

*Benjamin H. Brewster* and *Wallace & Oehlschlager*, for plaintiff in error.—The question here is whether, after a party has given a bond, and afterwards signs an endorsement upon the back of that bond, acknowledging an indebtedness to a greater amount than he is legally or in point of fact obliged to pay—he is precluded from showing that it was signed either under a mistake of facts or an ignorance of the law; and if not, should not the receipt-book, and the other evidence showing the premium and the deduction of the $400 back dues, have gone to the jury?

[Kelly *v.* Perseverance Building Association.]

It cannot be pretended that such an agreement, made under such circumstances, can have greater efficacy and force than a receipt for the payment of money.

In Vantries *v.* Richey, 8 W. & S. 88, the rule was asserted by Rogers, J., that the technical doctrine of estoppel applies in general only to deeds and records, and not to simple contracts.

The principle that a receipt is not conclusive evidence of the fact, either by plea in bar, as an estoppel, or in evidence to a jury, is too well established in this state to need more than the recital of some of the authorities on the point: Thompson *et al. v.* Faussat, 1 P. C. C. 184; Moore *v.* Commonwealth, 8 Barr 264; Lawrence *v.* Schuylkill Navigation Company, 4 W. C. C. R. 562; Muze *v.* Miller, 1 W. C. C. R. 328; Gue *v.* Kline & Reifsnyder, 1 Harris 60.

There is, however, another and a stronger view to be taken of this case, viz. : That, under the wording of this agreement, the defendant below was entitled to show the payments of dues on stock as offset or in defalcation of the indebtedness claimed by the association. The agreement is simply a memorandum endorsed upon the bond that the judgment shall be reduced to the sum of $1720, *consisting of the following items,* naming them.

There is no covenant here on the part of Michael Kelly waiving the offsets of his payments upon stock and interest to the amount of upwards of $1100. No agreement that when this judgment was sought to be enforced, he would not claim the payments and deductions which he was entitled to by law. The judgment being opened, and he permitted to defend, can he not show that of this net sum of $1500, he paid back to the association at the time he received it the sum of $400, and that he is entitled to other credits, for a large amount of payments made since that time?

This case falls fully within the principles of Kupfert *v.* Guttenberg Building Association, 6 Casey 465; Hughes' Appeal, 6 Casey 471, and kindred decisions, and does not in any way involve the question of the retroactive effect of the Act of Assembly of April 1859, relative to building associations.

*E. Spencer Miller*, for defendant in error.—Under the decision in 6 Casey 465, Kelly had a right, in the suit on the mortgage which secured this bond, to claim a deduction of the $500 premium, and of the cash actually paid to the association on account of his stock, which the association held as additional security; and while we decline to recognise the calculation of payments and interest made by him, we may admit that if Kelly had claimed to discount the instalments on stock as well as the premium, it shows the amount which would have been due by him.

But, if he had claimed to deduct the instalments in stock, it

would have been a release, abandonment, or extinguishment of his shares to the association. After a verdict against him for $421.08, he would owe that sum and hold no shares.

The case of the North American Building Association *v.* Sutton, 11 Casey 469, shows that Kelly might have preferred to retain his stock. In such a case, the only discount he could claim would be the $500 usurious premium. He could not ask for the restoration of paid instalments on the stock, nor refuse to pay those that afterward became due. If he claimed to continue a stockholder, of course he must pay for his stock what others paid.

When suit was brought on a first mortgage, between the same parties, prior to the one which represents the same debt that this bond represents, Kelly elected in respect to both mortgages and bonds to pursue the latter of the two courses. He preferred to keep his stock, pay the instalments on it, and claim only to discount the usurious premiums; and in respect to this bond it was reduced to writing. This agreement relieves Kelly from the usurious premium, and confirms his title to the stock by charging him with unpaid instalments.

If this judgment, which accords with the agreement, stands, Kelly owes the association $1720, and is the owner of ten shares of stock, which are perhaps worth all the difference between that sum and the $421.08 which he would owe, according to his own showing, after abandoning his stock.

If the judgment in this case be paid, and all further instalments on the ten shares, the association, under the decision in 11 Casey, can never refuse to recognise his shares.

If a party, who defends against a claim on the ground of usury by an agreement made in open court, assents to a judgment for a sum, even including usury, he is bound. The consent on the part of the plaintiff to abandon the rest of his claim, is a new consideration. An agreement to compromise is a consideration supporting both parties. Even if the plaintiff throws off nothing, an agreement not to try the case, to avoid the expense and delay incident to continued litigation, is a new consideration, which is free from the taint of the old one. The true question, in all cases in which it is alleged that the taint of an original fraud, legal or actual, still adheres to a claim, is whether you can prove the claim without proving the fraudulent transaction?

Here the association would only have to prove a disputed claim, and a compromise for a consideration.

When this agreement was made, the parties entering on the bond the amount of the compromise judgment, it is as if on the trial the defence had been abandoned, and a verdict entered for the plaintiff. What face would the defendant have after that to say that there was usury in the verdict?

[Kelly *v.* Perseverance Building Association.]

But, in this case, there is no allegation of usury in the judgment, nor any evidence of it.

Being bound, then and there, to elect what he would do, he exercised this election, by a written agreement, on which a verdict was obtained and judgment entered:—can he now recall that agreement and make an opposite election?

The receipt-book was not evidence to show payment on stock which had been excluded by the agreement, and that agreement was the measure of Kelly's liability.

There is no evidence of mistake, nor that Kelly would be better off if he could recall the agreement, and elect differently; nor that he will lose one cent or pay one cent too much, if the judgment below is sustained.

The cases in reference to receipts have no applicability to the case of an agreement for a consideration, and, *a fortiori*, not to one made in open court and put on record. If they did, they do not help Kelly. To get behind a receipt, some mistake must be shown.

The attempt to construe an agreement that a judgment shall be reduced to a certain amount, on which judgment is obtained on a verdict for that reduced amount, to mean that the defendant may reduce it by any further amount that he can at any time bring into dispute, is hardly worth considering. If, when two parties to a suit compromise it, and judgment is obtained for the sum agreed upon, either party can go behind that judgment and open it to litigate again some question that lay back of the compromise, and was expressly or impliedly embraced in it, such compromises will never be made.

But when the party who desires to open it, will not take the trouble to prove that it will be beneficial for him to open it, it would seem as if the very last ground of complaint were taken away from him.

The opinion of the court was delivered, May 6th 1861, by

LOWRIE, C. J.—The money loaned in this case was $1500, and the bond and mortgage given for it were for $2000 with interest. Suit being brought upon them in two years, the interest, if calculated according to the bond, would be 25 per cent. per annum. But this case is not included in the Act of 1859, and no interest is demanded beyond the common legal rate.

A year before the trial, the parties settled the amount due on this principle, and the defendant below agreed, in writing, that judgment should be entered against him for that amount, and hence we cannot see that there ought to have been any jury trial. This agreement made in the case concluded such a proceeding.

There is no error in the calculation; but the defendant now

[Kelly *v.* Perseverance Building Association.]

thinks that payments made on his stock ought to have been treated in the settlement as payments on his bond, and claims that they shall be. Yet that would extinguish his stock; and surely the parties could agree that it should not be extinguished, and such is the effect of the settlement. And the defendant would be in a very undesirable predicament, if he should extinguish it in this suit on his bond: since the judgment against him on the mortgage is for the full amount without deducting payments made as on the stock, and may be enforced accordingly.

Moreover, it seems to us improper that there should be an issue raised to the jury on the very means adopted by the parties to settle such issues. As well might there be such an issue on a judgment-bond or a judgment itself. Parties to such agreements ought to apply to the court to relieve them from their mistakes, if they have made any.

Judgment affirmed.